MILTON EDMONSTON, Appellant, *v.* RUTH ANN EDMON-
STON, Respondent.

*Estoppel* — *must be certain* — *effect of, when part of description of real property* —
*it does not apply to collateral actions* — *Declaration of person in possession of
land* — *when admissible.*

In 1832 E. Edmonston died, being then in possession, as was claimed, of a farm
of 100 acres, leaving him surviving his widow and seven children, who con-
tinued in possession of the farm until 1844, when, by agreement, the east
half was conveyed to the heirs in fee, and the west half to the widow, but
whether in fee or for life was in dispute. The widow died in 1869, leaving
a will by which she devised all her estate to her daughter, the defendant herein
Upon the trial of this action, brought by one of the children against the daugh-
ter, to recover his share of the west half, the daughter claimed that the
west half belonged to the mother in fee, by gift from her brother, who was a
tenant in common of the farm with her father, and that during the lifetime
of the latter he had set apart the west half of the lot to the mother.
In the deeds of the east half, made in 1844, the lots were described as " being lot
No. —, in the subdivision of the east half of the farm of Elijah Edmonston,
late of Phelps aforesaid, deceased, *owned and occupied at his death.*" The
plaintiff claimed that the widow, by executing deeds containing the words
in italics, was estopped from denying that the whole lot belonged to her
husband at the time of his death.
*Held,* that the words were too indefinite and uncertain to constitute an estoppel,
as they might be construed ·as meaning that the east half only belonged to
the husband.
That as the words in question were part of a description of premises, already
sufficiently described, no estoppel was created by them.
That even if they did constitute an estoppel, it was limited to questions arising
on the deed itself, and would not apply to a collateral action, such as the
present one, not founded upon the deed.
That the declarations of the widow as to her title were admissible, as tending to
characterize her possession, and to show that it was claimed under a title
adverse to that of the heirs of Elijah Edmonston.

Appeal from a judgment in favor of the defendant, entered
upon the verdict of a jury.

*Wm. F. Cogswell,* for the appellant.

*J. C. Cochrane,* for the respondent.

TALCOTT, J. :

This is an appeal from a judgment rendered on a verdict, after a trial at the Ontario Circuit, in an action of ejectment, in which a general verdict was rendered for the defendant.

The parties are two of the heirs at law of Elijah Edmonston, deceased, who died in 1832, as was claimed, in possession of a certain 100 acres in the town of Phelps. He left him surviving his widow, Elizabeth Edmonston, and seven children. The widow and children continued to live on the 100 acres until some time in the year 1844, when an arrangement was made between them by which the east half of the farm was conveyed by the widow to the heirs in fee, and the west half was set off to the widow, but whether in fee or not was one of the matters in dispute on the trial, the conveyance to the widow not being produced and having apparently been lost or destroyed, without being placed on record. The widow died in 1869, leaving a will by which she devised all her real and personal estate to the defendant, her daughter, who resided with her until her death and remained in possession of the east half of the 100 acres. This action was commenced in 1870, and has been once tried before the late SAMUEL SELDEN, as a referee, who reported in favor of the defendant, and the plaintiff took a new trial under the statute, as of course, on payment of costs.

It appeared that the 100 acres were conveyed to Elijah Edmonston and one Robert Orme, as tenants in common. Edmonston and Orme came from the State of Maryland, and purchased the land in 1807. They were brothers-in-law, Mrs. Elizabeth Edmonston being the sister of Orme. Edmonston and Orme appear to have occupied the land in common, until Orme, finding the climate did not agree with him, left this part of the country and returned to Maryland, and so far as appears, wholly abandoned his claim to the 100 acres. He died in the year 1827, never having been married, leaving the said Elizabeth Edmonston as one of his heirs at law.

There was evidence in the case tending to prove that Mrs. Edmonston claimed that her brother, Robert Orme, as he was about to leave this section of the country and return to Maryland, made a parol gift of his interest in the 100 acres to her, and there was evidence tending to show that Elijah Edmonston, in his lifetime, recognized the right of his wife to one-half the farm of 100 acres,

and also tending to show that a division had been made of the 100 acres between Edmonston and his wife, and that to her was assigned the west half of the 100 acres. The house in which the widow and children lived until about the year 1844, when the settlement took place between them, whereby she conveyed the east half of the farm to the heirs, and retained the west half herself, was situated on the west half, and she continued to live there till her death.

The point first presented by the appellant's counsel is, that the law will presume a grant from Orme to Edmonston by reason of the long possession of the latter. It does not become important to examine this position in this case, because we do not see that the question was anywhere raised upon the trial, either by a request to the court to so instruct the jury or otherwise, and this being an appeal from the judgment, we have nothing to do with any thing but questions of law raised upon exceptions. (*Boos* v. *The World M. Life Ins. Co.*, 64 N. Y., 236.) The same answer applies to another proposition of the counsel for the plaintiff, to wit, that the defendant acquired no advantage by her deeds from the heirs of Orme, as, being a tenant in common with the other heirs of her father, her deed inured to their benefit.

The appellant's counsel then claims, that the recital in the deeds between the heirs of Edmonston, that the 100 acres was *owned and occupied* by Elijah Edmonston, estops the defendant from claiming the same. The only exception taken by the plaintiff in respect to the charge, is to the refusal of the court to charge, as requested, in the following language: "That the transaction which occurred in 1844, the agreement and execution of these papers to the defendant, created an estoppel which prevents the defendant from setting up title." The court refused so to charge and the plaintiff's counsel excepted. The estoppel is now claimed to arise out of certain language used in the various deeds of subdivision of the east half of the 100 acres, all which were executed by Elizabeth Edmonston, and all, except the deed to herself, by the defendant, conveying to each of the heirs the portion of the east half of the said 100 acres which had been by an agreed partition set off to each of the heirs respectively. The language is a part of the description of the premises, and, taking the deed to the plaintiffs as an illustration, is as follows: " Being lot No. 4 in the subdivision of the east half of the farm of

Elijah Edmonston, late of Phelps, aforesaid, deceased, owned and occupied at his death."

Estoppels are not favored in the law, for where they exist they prevent evidence of the truth being given; wherefore, in order to constitute an estoppel, it should appear very clearly that the party sought to be estopped, deliberately made an affirmation or recital of the fact in question, and there should be no question but that he meant to state or recite, as a fact, that which he now seeks to contradict; and it is to be observed that the supposed estoppel in this case is in no wise certain; and it might be a question of doubt whether the words " owned and occupied at his death," referred to any thing more than the east half of the farm. The expression does not seem to be of that degree of certainty required in estoppels by deed; but of doubtful import, and such as might, at all events, be understood by the party executing the deed, to do no more than recognize the fact that Elijah Edmonston, at his death, *owned* and occupied the east half of the 100 acres in question. It will be perceived, also, that the recital by which it is claimed that the defendant is estopped is introduced into the deed as a part of the description of the premises, sufficiently described before, as being outer lot No. 4, in the subdivision of the east half of the farm of Elijah Edmonston. It is doubtful whether the principle of estoppel applies to matter of description.

In *Doane* v. *Willcutt* (16 Gray, 360) a party to an indenture of partition containing a full and accurate description of the land and a recital that it had been set off to a widow, was held not to be thereby estopped, to show that land held by him under a lease from the widow, of all the premises set off to her as dower, was not, in fact, though so recited, embraced in the dower lands. And in that case, MERRICK, J., delivering the opinion of the court, says : " This recital, however, is plainly only a part of the *description* of the estate upon which the deed was intended to operate, which is therein otherwise fully and accurately described. The doctrine of estoppel is not applicable to such a case. Where several particulars are mentioned and referred to in the description of the land conveyed, some of which are found to be erroneous, these may be rejected as a false demonstration, and the other parts of the description which are unambiguous and correct may be relied on to fix

and determine the rights of the parties under the deed." And the record of the assignment of dower was held to have been properly given in evidence, though it contradicted the recital, and the party claimed to be estopped by the recital was permitted to set up a title by adverse possession. So, too, an estoppel is limited to questions arising on the deed itself, and does not operate collaterally. (Bigelow on Estoppel, 286 ; Herman on Estoppel, 238.)

In *Carpenter* v. *Buller* (8 Mees. & W., 209) the court says : "But there is no authority to show that a party to an instrument would be estopped in an action by the other party, not founded on the deed and wholly collateral to it, to dispute the facts so admitted, though the recital would certainly be evidence." It was on the latter ground, as we understand from the opinion of Judge SELDEN, as referee on the former trial of this case, that he held the defendant not to be estopped.

The counsel for the appellant also insists that the admission of the declarations of Mrs. Elizabeth Edmonston, made to various witnesses and on various occasions as to her title, were clearly erroneous. Those declarations were inadmissible for the purpose of establishing such title, but the only objection made was to the admissibility of the testimony. The declarations of Mrs. Edmonston while in possession, on the subject of whether she claimed title and what title, were, we think, admissible in evidence to characterize the possession, as whether it was claimed under a title adverse to that of the heirs of Elijah Edmonston ; and specifying what title she did claim under, was one mode of showing that she claimed under an adverse title. (*Jackson* v. *Vredenburgh*, 1 Johns., 159 ; *Jackson* v. *Vandusen*, 5 id., 144.) In the case last cited, VAN NESS, J., delivering the opinion of the court, says : "It is every day's practice to admit the declarations of the person in possession, to show under whom and by virtue of what title he holds. That such evidence is proper has been so repeatedly decided by this court, that I supposed the point was completely at rest."

The plaintiff offered in evidence what purported to be a copy of the will of Orme, that is, the original will and proofs were probably lost, and the copy offered was a copy of what purported to be a copy of said will, as engrossed on the records of the County Court of Jefferson county, West Virginia. The will purported to have

been made in 1827, and purported to have been signed by Robert Orme, by his mark. If genuine, the will purported to devise to Malvina Dooley, all the land to which the testator was entitled in the county of Ontario, State of New York. The evidence was rejected by the court. It is probably enough to say of this offer, that it was wholly immaterial, as the will did not purport to convey any title to the plaintiff, and he did not propose, in any manner to connect his title with the devisee named in the will.

Thus, having considered all the reasons presented by the appellant's counsel for a reversal of the judgment, we conclude that they are insufficient, and whatever might have been the effect of the charge of the judge, or the omission to instruct the jury as to the legal position of the parties, we do not find that any exception was taken to the charge, save only that touching the alleged estoppel, in regard to which we think the learned judge was correct.

Judgment affirmed.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment affirmed.